May it please the court. My name is Philip Anderson. I represent Janet Bowman, the plaintiff in this case, and it's my first time appearing as an advocate before a Ninth Circuit panel, and it's an honor to be here, but I have to say I'm a little bit disappointed. And the reason is I always considered this opportunity to be an occasion to submit some brilliant legal analysis or some analysis of the case law. But whatever course I choose to follow in this case, whether it's following the principles and prongs of Saussure v. Katz, the analysis funnels down to the facts, and the truth of the matter is that this is a fact case, and in my opinion, it's not suited to legal analysis, and it wasn't suited to summary judgment. There's a number of facts. There are a number of fact issues set out in my opinion. But what are the disputed facts? How much force was used is the overriding disputed fact. Was it a gentle pulling, or was it a forceful yanking across the room? Was the officer even keeled and patient, or was he agitated and frustrated? Was there a minor injury, or was there a serious injury? Is that disputed? I mean, it seemed to me there was a relatively serious injury. I mean, at least there was an actual injury. Is the government claiming it's disputed? At summary judgment, no, it's not disputed. Okay. I don't think that there's a dispute as to whether that is disputed, I guess. Okay. So that's not disputed. That's not disputed. What happened to her? The injury, I suspect she had her torn, whatever. There's no evidence in the record to dispute that. What were the dynamics of the force again? Was it a pull-up or yank across the room? What were the physical statures of the parties involved? Does the record show, that was curious to me, the size of Ms. Bowman? I believe that is set forth in her affidavit, yes, Your Honor. And? She's 130 pounds, or she was at the time of the incident, at least. I don't know whether she's gained or lost weight, but she, at the time of the incident, was 69 years old, partially paralyzed on her left side, 130 pounds, and the officer was 240 pounds. I don't think this case was well-suited to summary judgment. I think a jury should have been allowed to view the different physical statures of parties. Is what happened from the time that the officer came to the house and the time that he lifted her gently or a bit heavy-handedly from the couch, wherever she was, what happened in between? Are there any disputes about that? I think that generally, I mean, there may be some immaterial disputes or less material disputes, but I think that it's generally agreed that it took 30 to 40 minutes. She had to do various things around the house, and the inference to be drawn from those facts is disputed, and the inference that I would propose is that the officer just grew frustrated. There is a dispute. The officer says that she said, I'm not going to jail, and she says she didn't say it before I pulled her. There's certainly a dispute as to whether she said that, and in general, whether she resisted either actively or passively. So I guess the answer is yes, there is a dispute on the facts leading up to the incident in question, as well as the inferences to be drawn from those facts. You're not challenging the actual arrest. And one of the things I find disturbing here, I don't know quite how to plug it in, is whether the amount of force that was reasonable had something to do with whether it was really necessary to arrest her or whether it was really a good reason to be arresting her to begin with. But that's not really an issue here, as I understand it. No, it's not a false arrest case. We haven't stated that claim, but certainly that is a factor under ground to be taken into consideration, the seriousness of the event. I take it there's no dispute that there was a physical altercation going on between the husband and wife at the time the officers arrived? That's correct. We don't dispute that Janet Bowman hit her husband on the back with a mop. And technically that may have been. So what should the officer have done? It's a very hard case because on the one hand it seems this woman was obviously quite impaired, and on the other hand she had done something which you agree was arrestable before. So what should they have done? They should have waited until she finished the third task. She was putting on her boots and she had requested to do three things, find her eyeglasses, feed her dogs and put her boots on, and she had finished the first two. Her dogs were fed, her eyeglasses were found, and she was in the process of putting on her boots and he should have waited for her to be repaired. She had to fix her glasses. So this is a 40 minute thing. I'm I'm not surprised the officer was somewhat frustrated. He normally you don't if you're arresting somebody, you don't let them feed the dogs, round them up and feed them and then bust around with the eyeglasses and so forth. I could see where he would be frustrated. But so what if he is frustrated? But what does that do to us? It makes it more likely and it's probative evidence that can be submitted to a jury to show that he used a level of force consistent with Mrs. Bowman's testimony rather than his own. What is the strongest case of this kind of I mean I take it what happened was he, in your view, he used too much force in pulling her off the couch when he was in this location. But usually excessive force cases involve beatings and repeated conduct by police. What is the closest case? You said this is a fact case. But I think we need a little law here that this kind of situation is actionable. The case that I cited in my brief was Wilkes. And that was a case where, again, disputed testimony by the plaintiff and the officer involved. And the plaintiff testified that the officer grabbed him and shoved him up against the car, where the officer testified that the plaintiff was using foul language. And essentially, the officer walked up and counseled the individual on the use of that language, did not shove him against the against the car. What what do you have to show with regard to this being clearly established law under the Supreme Court's rulings? But again, I think that that finding depends on the level of force that was used. And there are factual questions regarding that that issue. What case would you be relying on that to show that it's clearly established? I would point to Wilkes, the case I just cited. And there are other cases involving subdued arrestees where the use of any significant force, physical force, is considered excessive. What would you point to in the record to establish your contention that there was actually a dispute over the amount of force? I'm not really sure there was a dispute over the amount of force. Maybe a dispute in the characterization. But basically, he told her it was enough force to try and get her to stand up. Well, it turned out that she was fragile and he knew it and maybe should have used less than the usual amount of force. I mean, I think when we're talking about amount of force, we're talking essentially physics and how much force was actually applied. And there's not direct testimony on that. But there is testimony in Mrs. Bowman's affidavit that she was yanked five feet off of her feet, first of all, which one could infer that a significant amount of force was used more than necessary to simply help her up, and that she was yanked five feet across the floor. The injury that occurred, the level of pain that she testified she had immediately following the incident. Which arm was the damaged rotator cuff, the one that he pulled her up off the couch or the one where he pulled her up when she was crawling out? The second one. The second one. Yes. So that's really the force we're talking about, isn't it? The first one, she was seated on the couch. She did not have any weight on her feet. Again, evidence of the amount of force that would have been transmitted to her shoulder. It may have been the same amount of force that would have been transmitted to her feet if she had her feet under her. But if she didn't and the officer could see that, then obviously there'd be more force transmitted. That wasn't the one that was injured. It was hurt, but it wasn't the one that caused the rotator cuff tear. Correct. That was the second one. You're just about used your time. You need 30 seconds to follow. Thank you. May it please the Court, Mark Hamburg on behalf of the appellees, Ronnie Dozier and the Chichester County Sheriff's Office. Good morning. Really, the inquiry in this case is on the qualified immunity analysis that was ruled on by the by the by Judge Coffin. What has to be kept in mind here is the standard on a qualified immunity defense is that the according from the associate case, the relevant dispositive inquiry in determining whether a right is clearly established would be, is whether it would be clear to a reasonable officer. That's the second part. We also told us we have to decide the first part as well. Yes, Your Honor. Thank you. And we really aren't disputing the first prong at this point for purposes of this argument. We'll concede that that that prong has been met. I think the focus here is on the second prong on whether it would be clear to a reasonable officer, Officer Dozier, in the situation that his conduct was unlawful in the situation he confronted me. You're conceding that there was excessive force? No. Yes, you are. That's what you just said. That's what you just said. What I meant to say was that in terms of a summary judgment on whether there could have been a violation of a constitutional right, that there was a constitutional right there that arguably could have been violated. So you're conceding that for purposes of summary judgment, there was sufficient evidence to go to the jury on the question of whether or not there was excessive force? Well, no. We're not conceding that. I guess maybe I'm misunderstanding the Court's inquiry here. But the we're saying there was an arrest that took place here. There was an amount of force. In that sense, there was a constitutional right that arguably could have been violated. Maybe I'm misunderstanding. Was there a question of fact that should have been determined with regard to the excessive force, that is, the size of the people? When he pulled her up, they both ended up on the floor, didn't they? Yes. I don't believe there is any question on any question of fact on the amount of force that was used. So would that have been enough to go to a jury on a question of whether it was excessive force? Well, maybe I'm misunderstanding. No, we do not believe there was enough to go to a jury on that. It would not be. I mean, he pulled her up. Here's this little woman that's disabled. He pulls her up off the couch with such force that they both end up on the floor. Now, why wouldn't that be a jury question? Well, first of all, it must be kept in mind what the officer was confronted with here. The officer was confronted with a domestic violence situation. Under Oregon law, the officer was required. Well, is that true? First of all, we have another case on the calendar where they're telling us it isn't true. And second of all, isn't there a second sentence that says something about if there are two people, you don't have to arrest both of them? I do not believe that is in the statute. It says the – I thought that was in the statute. The statute, if I might, it says the officer shall arrest and take into custody the alleged assailant or potential assailant. Now, that statute does talk in terms of the singular. But the officers on the scene here made a determination that both parties were assailants. He got hit with a mop. I mean, she hit him with a mop. The officer – there's no dispute about that fact. The officers observed her hit him with a mop. There's also the fact, undisputed, that Ms. Bowman hit Mr. Bowman with a mop. The next sentence after the sentence that you – A says what you said it says. B says when the police officer makes an arrest under paragraph A of this subsection, the peace officer is not required to arrest both persons. True. That's true. But it – Because isn't the point of this to just separate them? Well, I believe that's the point. So it's not true that they actually arrest them both. And, again, the focus on qualified immunity, though, is what was the officer's reasonable belief under the circumstances that confronted the officer. The officer's – with 20-20 hindsight, the officer's judgment doesn't have to be perfect. There's any number of things that the officer, looking back on it, could have done, may have done. But it has to be viewed, again, as perfect. Wouldn't it also matter for – and I know we're getting off your subject a little, and I'll let you get back to it, as to the clearly established law. But as to whether it was a constitutional right, wouldn't the factual dispute as to what immediately preceded the force also matter? Either it's a direct factual dispute as to whether she said, you know, I'm about – wait a minute, I'm about to be ready. Or whether she said, I'm not going to jail. Isn't there a direct factual dispute on that? Well, there may be. But what there is not a factual dispute about is the fact that from the officer's perspective, he believed that Mrs. Bowman was resisting arrest. Well, suppose she said – as she said, she said, you know, I'm just about right. Just wait a little longer. But at the moment when this – the alleged excessive force occurred, where he grabbed – the officer grabbed her by the arm, pulled her up and – keep in mind, the officer believed that he had to arrest her and take her into custody. Whether that was correct or not, that was his belief. But he didn't have to arrest her at that moment if she was – if she had just said, you know, I don't know exactly what she said. She said – or suppose she had said, you know, two more minutes and I'll be ready. Sure. If that had happened, we may have a different case here, certainly. But what had happened was at that moment, Mrs. Bowman had landed on top of the officer. That's not because he pulled her. I'm saying just before that. Sure. Just before that. She said something like, I don't know exactly what. Sure. You know, I'm almost ready. No, there is – there is a dispute. The officer says that she said, I'm not going to jail. She said, I'm – in a calm manner, I'm just about ready to go. Okay. But at the moment this allegedly happened, the officer had pulled her off the couch. They fell back on the floor and there was a struggle that ensued. Now, whether you – that's an undisputed fact. But that's after this dispute about what was said first, right? That's true. But this – but – But wouldn't it matter as to excessive force which one was true? Because if you have, you know, an elderly woman who said, I break easy and who had – he knew had a stroke and she says, I'm almost ready, why isn't it excessive to pull her at all? Well, because at the moment he did, they had fallen to the floor. Mrs. Bowman, by her own testimony, said she was trying to get away from the officer. Now, she's saying she was trying to get away because she was – she just didn't want to be handled by the officer. But the important point here, I believe, is what was in the mind of the officer at the time? And if you look at – excuse me – the supplemental excerpt of record, page 64 of Mrs. Bowman's deposition and page 65, that would be supplemental excerpt of record, exhibit 3, pages 12 and 13. She says that I want – I'm trying to get up off the floor. I want him to get away from me. I'm really confused because I start looking one step back. Unless I'm mixed up about the facts. She was sitting on the couch. He was sitting somewhere else. She says she says, I'm almost ready to go. He says she said, I'm not going to jail. If she said what he said she said, then pulling her at that juncture may have made sense. But if she said what she said she said, before they ever got on the floor and had the struggle, why, given all the circumstances, including her physical condition, why was it appropriate to pull her at all? And I'm sorry. Before they've gotten to the floor, before she's fallen, anybody's fallen on anybody, before they're struggling, before any of that. I believe that the undisputed facts on that are that he was trying to assist her to get up off the couch. And let's assume that's true, that he was trying to assist her when they fell to the floor. That's what the – our position is what the court really needs to focus on is that moment. I don't think you can assume that she was having trouble getting off the couch and he came over and said, let me give you a hand. I don't – I don't think you can see that in there. Well, let's assume that the officer pulled her up off the couch. Yeah. Before trying to go. Sure. Well, and pulled her with the extent that here's a 240-pound man pulling up a 130-pound woman. Pulled her strongly enough that they both end up on the floor. I mean, that seems – that's a pretty hard pull. True. Although Ms. Bowman is disabled. She has limited use. Yeah, but he isn't. True. But they – the undisputed facts believe her that they lost – balance was lost. They both fell to the floor. But the excessive force claim comes from when the officer tried to pull her up off the floor. That's where they're claiming that Mrs. Bowman suffered the tear to her rotator cuff. Off the floor or off the – Off the floor. Well, that's where he got the tear. But then you could have excessive force without tearing the rotator cuff. And I see my time is just about up here. But the Saussure case also refers on page 28 to the powers and responsibilities of the officer. And again, it's – was it clear to a reasonable officer that the conduct was unlawful in the situation he confronted? And I believe the officer – You have used your time. Thank you. And I think we understand your position. Can I just clarify one thing? Yes. Are you making a concession or are you not making a concession? You began by saying you were conceding something, but as I understand it, you're not. No, we're not making a concession. Well, you're conceding she has a right to be free from excessive force. Yes. In that sense, there was potentially a constitutional – there was a constitutional right at issue here. Okay. Thank you. Briefly, Your Honors, first of all, there aren't any cases out there that require the court to adopt the officer's mindset wholesale, especially in a case like this. If this were a case where it was a novel use of a weapon, a pepper spray, or a gunpointing case five years ago, or even a case where there's a reasonable yet mistaken belief as to the danger of the circumstances, it might – that kind of case would lend itself more to following the officer's perspective. When you have a case like this where there's – the amount of force is in question and there are two pictures of it, it's not a case that, as Justice Ginsburg – There are cases, are there not, that have recognized that the amount of force – in judging the amount of force, the known physical condition of the defendant is relevant? Yes. To drive the diabetes of the defendant. Correct. And that's really the question here. I mean, if she wasn't in the condition she was in, this wouldn't be excessive force, right? If she was perfectly healthy and she tore her rotator cuff, I could see in that kind of case it could be argued that that would tend to show that it was an even stronger pull. But certainly that is a factor in this case. So Justice Ginsburg, we've heard of these kind of cases where the sauté analysis is inutile, her word. The second quick point in response to Judge Hugg was that in addition to just waiting for her to finish putting on her boots, there could have been other ways to assist her, such as getting down, crouching, allowing her to get on her shoulder and standing up. But certainly a yank of the extent that is indicated in the facts, viewing them in Mrs. Bowman's light most favorable to her, was not the way to go about it. Thank you. Thank you. Thank you, Justice Ginsburg.
judges: Schroeder, Hug, Berzon